# IN RE THE BOROUGH OF POTTSTOWN.

CERTIORARI TO THE COURT OF QUARTER SESSIONS OF MONT-GOMERY COUNTY.

Argued April 19, 1887—Decided January 3, 1888.

1. Where the title of an original act fully expresses the subject of the enactment, and an act entitled a supplement thereto has a title sufficiently expressing any subject within the purview, and contains provisions properly germane to the subject, of the original, the supplementary act is not unconstitutional.

2. The act of June 11, 1879, P. L 150, (amended by the act of May 17, 1883, P. L. 36,) entitled "a supplement to an act for the regulation of boroughs, approved April 3, 1851," providing a method for changing the limits of boroughs, is not unconstitutional, as violative of § 3, article III., the subject being sufficiently expressed in the title; nor is it violative of par. 2, § 7, article III., as containing matter of local or special legislation.

3. Where upon certiorari to the Court of Quarter Sessions, error is assigned to the overruling of challenges of grand jurors, and the facts upon which the challenges were made do not appear by bill of exception, the assignment will not be sustained.

4. Though upon such certiorari the record does not show that the court caused the application for the annexation of adjacent territory to a borough, to be laid before the grand jury when in session, the court will be presumed to have discharged the duty.

Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ.; PAXSON and STERRETT, JJ., absent.

No. 181 January Term 1886, Sup. Ct.

Opinion of Court below.

On June 1, 1885, certain "owners of and residents thereon of certain lots, out-lots and other tracts of land in the township of Pottsgrove," petitioned the Court of Quarter Sessions to have the said lots, out-lots and tracts, described by metes and bounds, annexed to the borough of Pottstown, according to the acts of assembly in such case, etc. On June 30, 1885, exceptions were filed, setting out, among other grounds, that "the act of assembly under which the proceeding was instituted is unconstitutional and void and incapable of execution." The exceptions were dismissed on September 21, 1885.

On October 8, 1885, *Mr. Weand*, for the exceptants, "challenges the following grand jurors, viz.: Jonathan Kehl, a resident and freeholder of the borough of Pottstown, Thomas Beekley, a resident and freeholder of Pottsgrove township; said Kehl and Beekley, being directly interested in said proceedings:" verified by affidavit. The challenge was filed and overruled. On October 12, 1885, the certificate of the grand jury recommending the granting of the prayer of the petitioners was filed, whereupon on November 2, 1885, the opponents filed the following exceptions:

1. The proceedings are illegal and void, as the act of June 11, 1879, P. L. 150, under which said proceedings are instituted, is unconstitutional and void.

2. The borough of Pottstown having been incorporated by act of assembly, Oct. 6, 1815, 6 Sm. L. 246, is not entitled to the provisions of the acts of May 17, 1883, P. L. 36; of June 11, 1879, P. L. 150, and April 3, 1851, without first complying with the 33d. sec. of act of 1851.

3. The court erred in not sustaining the challenge to grand jurors Jonathan W. Kehl and Thomas Beekley, both of whom were residents within the district affected, and thus directly interested in the result.

On argument of these exceptions, the court, B. MARKLEY BOYER, P. J., on December 7, 1885, filed the following opinion and decree:

Since the overruling of former exceptions and the action of the grand jury, exceptions have been filed anew to the proceedings in this matter; and the act of June 11, 1879, more distinctly assailed as not being entitled in conformity with the requirements of the constitution, and not available under the

act of May 17, 1883, amending the same so as to extend its provisions to all boroughs howsoever incorporated. We deem it proper, therefore, to add something upon this question to the remarks heretofore filed; mindful of the principle laid down in Mauch Chunk v. McGee, 81 Pa. 433, that "useful and honest legislation should not be defeated by rigid adherence to the letter of the constitution, or pretexts be caught at to avoid legislation, where it can be fairly reconciled with the constitution."

The earlier general law among the acts of assembly now in force for the incorporation of boroughs and change of their limits is the act of April 1, 1834, P. L. 163. That act provided for the incorporation into boroughs of towns or villages containing not less than three hundred inhabitants by the Court of Quarter Sessions, with the concurrence of the grand jury of the county, upon the application of not less than a majority of the freeholders residing within the proposed limits. The third section of the same act provided for a change of the limits of an incorporated borough in the following words: " The same proceedings shall be had on an application to change the limits of any borough incorporated under this act, and the courts aforesaid shall have full power to decree such alteration as may be needful." This is all that act says upon the subject of change of limits, or which could be applied to the annexation of territory to boroughs already incorporated under that act.

The act of April 3, 1851, entitled " An act regulating boroughs," P. L. 329, left the proceedings provided by the act of 1834 unrepealed: see McFate's Appeal, 105 Pa. 323, but repealed the restriction to towns of three hundred inhabitants. It also provided, in section 30, for another new and independent method of annexing adjacent territory to boroughs, by investing the burgess and town council of the borough with absolute authority to annex by ordinance adjacent territory upon the petition of twenty freeholders, owners of land residing within the section proposed for annexation. From this mode of annexation no appeal was provided until the act of June 2, 1871, section 4, provided in such case for an appeal to the Court of Quarter Sessions. Then came the act of June 11, 1879, P. L. 150, which supplemented the act of 1851 with a mode of proceeding not mentioned in that act, but entirely

consistent therewith, and leaving the proceedings provided for in the act of 1851 entirely unamended and unaffected.

Upon examination it will be found that the mode of annexation provided by the act of 1879 is in fact a re-enactment of the act of 1834 in that regard, and only expressly applying in detail the same provisions for the annexation of territory to boroughs contained in the general sentence already quoted from the act of 1834, assimilating proceedings for that purpose with the proceedings provided for the incorporation of boroughs by that act, but applying them to boroughs incorporated under the act of 1851. It cannot be said, therefore, that the act of 1879 is in conflict with either of the preceding acts upon the same subject, or that it in any way alters either, although it adds some directions in regard to notice.

But it is contended that the act of 1879 is unconstitutional and void, because not properly entitled. It is entitled " A supplement to an act for the regulation of boroughs, approved the third day of April, A. D. one thousand eight hundred and fifty-one." It was settled by the Supreme Court in the case of State Line & Juniata Railway Co.'s Appeal, 77 Pa. 429, that where the legislation in a supplement so entitled is germane to the subject of the original act, the object of such supplement is sufficiently expressed in the title. Were the ruling otherwise, Justice PAXSON, in the case just cited, remarks that about fourteen hundred acts then recognized as laws upon the statute books of our state would be invalidated. All that is required in such a case is that the supplement should be germane to the subject of the original act. That the legislation of 1879 is germane to the subject of the original act scarcely admits of a doubt. The original bill provided a mode for the annexation of territory to boroughs by ordinance of the borough council; the act of 1879 provided for a proceeding for the same object initiated by an application to the court, leaving the mode provided by the original act untouched.

The subject of the act having been therefore sufficiently expressed in the title, does the form of its enactment conflict with the sixth section of the third article of the constitution? We think, for the reasons already given, plainly not, leaving, as it does, the act of 1851 unaltered.

The acts of assembly already cited, however, are all applica-

ble only to boroughs incorporated under one or other of the general borough acts which have been named until the passage of the act of May 17, 1883, P. L. 36, which extended the operation of the act of 1879 to all boroughs in the commonwealth howsoever incorporated. In its enactment the strictest letter of the constitution was observed. It is entitled "An act to amend the first section of an act approved June 11, 1879, entitled 'A supplement to an act for the regulation of boroughs, approved April 3, 1851, so as to include all incorporated boroughs.'" The act proceeds to recite the amended sections and to re-enact the section so amended at length, to wit: "That the several Courts of Quarter Sessions within this commonwealth, by and with the concurrence of the grand jury of the county, shall have power to change the limits of any incorporated borough within this commonwealth." There having been previous to the passage of this act no mode by which the annexation of adjacent territory, as in this case, to a borough incorporated by a special act of assembly could have been accomplished without the surrender of the existing charter, the act of 1883 was a needed and useful act of legislation; as the merits of the case, illustrated by the large numerical majority of the resident freeholders who petition, and the unanimous certificate of the grand jury, sufficiently indicate.

And now, December 7, 1885, the exceptions are dismissed, and the court confirms the certificate of the grand jury and decrees that the part of the township of Pottsgrove within the limits specifically described by metes and bounds in the petition for the annexation of the same to the borough of Pottstown, be annexed to the same in conformity with the prayer of the petitioners; and that the said petition and this decree shall be recorded in the recorder's office of Montgomery county at the expense of the applicants.

The exceptants then took this writ assigning for error, that the court erred:

1. In holding that the act of 11th June, 1879, P. L. 150, under which said proceedings were instituted, was constitutional.

2. In not sustaining the challenge to the grand jurors, Jonathan W. Kehl and Thomas Beekley.

3. In decreeing the annexation of the adjacent territory as

prayed for, and in dismissing the exceptions to said proceedings.

4. The record does not show that the court caused the "application to be laid before the grand jury when in session."

*Mr. H. K. Weand*, for the plaintiffs in error:

1. The acts of April 1, 1834, P. L. 163, April 3, 1851, P. L. 320, June 2, 1871, P. L. 283, all referred to proceedings on the part of the borough; whereas the act of June 11, 1879, P. L. 150, is an enabling act for townships, with an entirely new subject matter introduced under the guise of an amendment to the borough law. It enacts a new and entirely different law in addition to that already existing, and, all reference to the main subject of the bill being omitted in its title, it is unconstitutional: § 3, article III., of the constitution; Rogers v. Improvement Co., 109 Pa. 109; Phœnixville Road, 109 Pa. 44.

2. It is contended that the act of 1879 is in every sense a local or special law, and violative of par. 2, § 7, article III., of the constitution. By its first section its operation is confined exclusively to such boroughs as are- incorporated under the act of 1851, the general borough law; four of the largest boroughs in Montgomery county are excluded: Morrison v. Bachert, 112 Pa. 322. There is no attempt at classification; but a mere exclusion of certain boroughs: Commonwealth v. Patton, 88 Pa. 258; Scranton Sch. Dist.'s App., 113 Pa. 176; Davis v. Clark, 106 Pa. 384.

3. The challenge of the two grand jurors residing within the district affected by their action, should have been sustained. They were clearly interested and therefore not impartial. TRUNKEY, J.: Did you except to the ruling? No, sir.

4. Section 3 of the act of 1879 requires the "court shall cause the application to be laid before the grand jury when in session." The record is silent as to how the grand jury assumed jurisdiction of the case.

*Mr. M. D. Evans* (with him *Mr. J. Wright Apple*), for the defendants in error:

1. The act of May 17, 1883, P. L. 36, extended the operation of the act of June 11, 1879, P. L. 150, to all the boroughs of the commonwealth. The act of April 3, 1851, P. L. 320,

provided a mode for the annexation of adjacent territory on the petition of twenty freeholders residing thereon, by the action of the borough authorities. The supplemental act of 1879 provides for the annexation of adjacent territory on the petition of a majority of the freeholders residing thereon by the Court of Quarter Sessions.

2. The provisions of the supplemental act of 1879 relate only to boroughs and to but one of the many objects of borough regulations, viz.: the extension of borough limits by the annexation of adjacent territory. The title of said act, fairly giving notice of, not misleading or averting inquiry into, the contents of the act, with unity of subject, and the legislation germane to the subject-matter of the original bill, the object is sufficiently expressed, and the act is not unconstitutional: Allegheny County Home's App., 77 Pa. 77; State Line, etc., R. Co.'s App., 77 Pa. 429.

3. True, the operation of the act of 1879 is confined to boroughs incorporated under the borough law of 1851, and all other boroughs were excluded until the passage of the act of May 17, 1883, P. L. 36. But boroughs incorporated under the act of 1851 constitute one great well-defined class of boroughs, and all legislation affecting this class would be general. A statute which relates to persons or things as a class is a general law: Wheeler v. Philadelphia, 77 Pa. 388. Since the passage of the borough law of 1851, all boroughs incorporated under it have been recognized and legislated for as a distinct and separate class.

4. There is no evidence that the grand jurors challenged were or are residents of the territory annexed. It could make no difference if they were; they would not be judges of their own cause, but of a public application affecting the interests of a community.

5. The presumption is that the court caused the application to be laid before the grand jury in accordance with the requirements of the act.

OPINION, MR. JUSTICE CLARK:

This writ of certiorari brings up the record of the Court of Quarter Sessions of Montgomery county, in a proceeding instituted under act of June 11, 1879, P. L. 150, and the amenda-

tory act of May 17, 1883, P. L. 36, to change the limits of the
borough of Pottstown.   The borough of Pottstown was incor-
porated by a special provision in the act of February 6, 1815,
P. L. 247, and has never become subject to the provisions of
the revised and general borough law of April 3, 1851..

The act of June 11, 1879, is a supplement to the general
borough law, and by its express terms applies to a change of
limits of any borough incorporated under the general statute;
therefore, to a part only of the existing boroughs in the com-
monwealth.   On the part of the plaintiffs in error it is con-
tended that this act of 1879 is in conflict with the third section
of the third article of the constitution, in this, that the subject
of the statute is not clearly expressed in its title; and also
with the seventh section of the same article, in that it is in
effect a local and special law "regulating the affairs of bor-
oughs."

The general act of 1851 is entitled "An act for the regula-
tion of boroughs," and was intended to furnish a uniform and
general system for the purpose stated.   It provides for their
incorporation, for the extension of their limits, and for the
election of corporate officers ; it defines the corporate powers,
designates the duties of the corporate officers, and sets forth
in the most comprehensive manner the rules and restrictions
which shall govern in the affairs of the municipality.   The
title, it must be conceded, completely covers the subject and
design of the statute; it is "An act for the regulation of
boroughs."   Under this act the incorporation of boroughs by
the Court of Quarter Sessions is authorized, without regard to
population, and the burgess and town council were therein
authorized upon the petition of any number not less than
twenty of the freehold owners of lots or out-lots, or other
tracts of land, in any section lying adjacent to said borough,
to declare by ordinance the admission of the section on which
such petitioners and others reside."

The act of 1879 is entitled "A supplement to an act for the
regulation of boroughs, approved," etc., and the specific sub-
ject of the act is the mode of changing the limits of boroughs
incorporated under the act of 1851, to which it is supplement-
ary, in the annexation of adjacent territory.   When the change
of limits involves a contraction of lines, the proceeding is

under the third section of the act of April 1, 1834: Darby v. Sharon Hill, 112 Pa. 66; McFate's Appeal, 105 Pa. 323.

The act of 1879 provides that jurisdiction shall be exercised in the change of borough limits by the Court of Quarter Sessions of the proper county, and not by the burgess and town council, as prescribed by the act of 1851; that the application shall be in writing, "signed by a majority of the freeholders residing within the limits to be annexed;" that the court shall cause it to be laid before the grand jury when in session, etc., etc. Thus it will be seen that the supplement is not foreign, but cognate, not only to the title, but also to the subject of the original statute. The title to the act of 1851, although expressed in general terms as "An act for the regulation of boroughs," as we have already said, completely covers the subject of the enactment, and, this being so, an act entitled a supplement thereto has a sufficient title to cover any matter within the purview of the original, and which might properly have been embraced therein. The third section of the third article of the constitution requires that the subject of a statute shall be clearly expressed in the title. "The title must not only embrace the subject of the proposed legislation, but must express the same so clearly and fully as to give notice of the legislative purpose to those who may be especially interested therein:" Phœnixville Road, 109 Pa. 44. But in the case of a supplement, where the subject of the original act is sufficiently expressed in its title, and where the provisions of the supplement are germane to the subject of the original, the true rule is, that the subject of the supplement is covered by a title which contains a specific reference to the original by its title, and declares it to be a supplement thereto: State Line & Juniata R. Co.'s Appeal, 77 Pa. 429.

It is said that the inhabitants of the townships are injuriously affected by this legislation, as the withdrawal of the territory affects the division of the townships into convenient school districts; withdraws valuable property from taxation for township purposes, etc.; but this was equally so under the act of 1851. The application under either act must come from the inhabitants or residents of the territory proposed to be annexed, and certainly the townships cannot complain that the question of annexation is withdrawn from the arbitrary

Opinion of the Court.

action of the burgess and councils and submitted to the Court of Quarter Sessions, where all parties are assured of a day in court, and a full and fair adjudication made under the law. We are of opinion that the subject of the act of 1879 is fully expressed in its title, and that it is not in conflict with the constitution on that ground.

Is it a local or special law regulating the affairs of boroughs, and, therefore, in conflict with the seventh section of the same article? It must be conceded that it does not apply to all boroughs by its express terms. It has application to such only of them as were originally incorporated under the act of 1851. It is contended, however, on the part of the appellees, that the several boroughs incorporated under the act of 1851 constitute a well-defined class of boroughs, as distinguished from another class incorporated either by special charter or under previous general laws, and that under the doctrine declared in Wheeler v. Philadelphia, 77 Pa. 338, a statute which relates to persons or things as a class is a general law, whilst a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition. We are happily relieved, however, from the decision of this question. The act of June 11, 1879, was afterwards amended by an act approved May 17, 1883, P. L. 36. The amendatory act is in the words and form following: Be it enacted, etc. That the first section of an act of assembly, approved the eleventh day of June, anno domini, one thousand eight hundred and seventy-nine, entitled "A supplement to an act for the regulation of boroughs, approved the third day of April, anno domini, one thousand eight hundred and fifty-one," and which is as follows: "That the several Courts of Quarter Sessions within this commonwealth, by and with the concurrence of the grand jury of the county, shall have power to change the limits of any borough incorporated under the act to which this is a supplement, and to decree such alterations as may be necessary and expedient," be so amended as to read, "That the several Courts of Quarter Sessions within this commonwealth, by and with the concurrence of the grand jury of the county, shall have power to change the limits of any incorporated borough within this commonwealth." This act of May 17, 1883, has not been subject to any constitutional criticism; it is a literal

re-enactment in terms of the first section of the act of 1879, giving the provisions of that section general application throughout the state to all the boroughs thereof.

From and after May 17, 1883, therefore, the several Courts of Quarter Sessions within the commonwealth, by and with the concurrence of the grand jury, had undoubted power to change the limits of any incorporated borough within the commonwealth. The proceedings in this ' case were commenced June 1, 1885, in the proper court, and the decree cannot be successfully assailed for want of constitutional power in the court to make it. What has been said disposes of the first and third assignments of error.

The second assignment cannot be sustained. The facts upon which the challenges were made do not appear upon the record by bill of exceptions or otherwise. The record shows simply that the challenges were made and overruled; no exception appears to have been taken.

The fourth assignment is without merit; the court will be presumed to have discharged its duty; omnia præsumuntur rite esse acta.

We find no error in the record, and, therefore, the proceedings of the Quarter Sessions are

Affirmed.