Gas and Water Company of Downingtown *v.* Borough of
Downingtown, James R. Gordon, Burgess, and S. Aus-
tin Bicking, Guyon Miller, Samuel P. Brown, Frank
J. McGraw, E. Vinton Philips and Samuel D. White,
Town Council of the Borough of Downingtown, Ap-
pellants.

*Constitutional law—Statute—Title of act—Title of supplement.*

If the title of an act fairly gives notice of the subject of the act so as
reasonably to lead to an inquiry into the body of the bill, it is all that is
necessary.   It need not be an index of the contents.

Where the title of an original act fully expresses the subject of the
enactment, and an act entitled a supplement thereto has a title sufficiently
expressing any subject within the purview, and contains provisions prop-
erly germane to the subject of the original, the supplementary act is not
unconstitutional.

*Constitutional law—Title of act—Gas companies—Acts of May* 25, 1878,
*and April* 8, 1861.

The Act of May 25, 1878, P. L. 145, entitled " A supplement to an act
entitled ' An act concerning the sale of railways, canals, bridges and plank
roads' approved April 8, 1861, extending the provisions of said act to coal,
iron, steel, lumber or oil or mining, manufacturing, transportation and
telegraph companies in this commonwealth," is not defective in title, and
embraces gas companies, as they are within the designation of manufac-
turing companies.

*Corporations—Forfeiture—Collateral attack on charter.*

The question of the forfeiture of the charter of a corporation cannot be
inquired into or considered in a collateral proceeding.

Argued Feb. 6, 1899.   Appeal, No. 262, Jan. T., 1898, by
defendants, from decree of C. P. Chester Co., in equity.   Be-
fore STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.
Affirmed.

Bill in equity for an injunction.

The facts appear by the previous report of the case in 175
Pa. 341, and by the opinion of HEMPHILL, P. J., which was as
follows :

The Supreme Court, when this case was before it (175 Pa.

341) upon demurrer to the bill, said : " At the time of the passage of the act [incorporating the Downingtown Gas and Water Company], the borough had failed to exercise the power conferred upon it to establish waterworks.   The borough was a mere agency of the state for governmental purposes ; its charter was not a contract within the protection of the prohibition against laws impairing the obligation of contracts, and it had no vested rights to its powers and franchises.   The agency was revocable.   The legislature had the power to take away the right of the borough to construct waterworks and confer it upon another.   Its power over the subject-matter was absolute and it exercised it, by creating a corporation and conferring upon it the power which it had previously conferred upon the borough.   It thus created a new agency and conferred upon it privileges which were in terms exclusive of all other agencies. The water company accepted the grant of power which the borough had failed to execute, together with its privileges, and made expenditures and completed the works.   The state, dealing with its own agencies over which it had sovereign control, and conferring upon one of them an unexecuted power which had been possessed by the other, granted to the water company the exclusive authority to supply water to the borough and its vicinity and to such persons residing therein as might desire the same."

Having thus defined the status of the parties the court declared that the writ of injunction prayed for should have been granted ; reversed the order of the court below sustaining the demurrer and dismissing the bill ; and directed the record to be remitted for further proceedings.

Upon remission of the record, defendant filed an answer in which it " admits that it has provided waterworks with which to supply itself and its citizens," and " that it has been and is now furnishing water to itself and its citizens," thus admitting that it has trespassed upon and violated the exclusive privileges conferred upon the plaintiff, and after the right to erect waterworks had been taken away from it by the legislature. Unless, therefore, there be some good ground or reason shown to the contrary, the injunction should issue, for it is too well settled to need citation of authorities that an injunction will be granted to secure to a party the enjoyment of a statutory

privilege or franchise. Now the sole reason assigned by defendant why the injunction should not issue is that the plaintiff has forfeited its exclusive privileges or franchises by misuser; alleging "that the plaintiff has not furnished a sufficient water supply to the defendant and its citizens at any time, nor has it ever been possessed nor is it now possessed of a supply of water or of works capable of furnishing the defendant and its citizens with anything approaching an adequate quantity of water." If these allegations be true they would not justify the defendant in the exercise of a power of which it had been deprived and which with exclusive privileges the legislature had conferred upon the plaintiff company. Nor can the question of forfeiture of plaintiff's corporate franchises be determined or inquired into in this proceeding. "If there be anything settled beyond all cavil or controversy," said Justice ROGERS in Irvine v. The Lumbermen's Bank, 2 W. & S. 204, "it is that the violation of a charter of incorporation cannot be made the subject of judicial investigation in a collateral suit." See also Cochran v. Arnold, 58 Pa. 405. If the defendant and its citizens have, as it alleges, suffered from plaintiff's failure to provide a sufficient supply of water, its remedies were numerous and ample. It could, by proceedings in the common pleas, under the Act of June 10, 1881, P. L. 112, have compelled the plaintiff to supply a sufficient quantity of pure water; or have purchased the works and property of plaintiff company in the manner and upon the terms provided in section 16 of the Act of March 11, 1857; or have had the plaintiff's charter revoked by the legislature; or forfeited by proceedings under a writ of quo warranto. But it had no power or authority to adjudge the forfeiture of the plaintiff's exclusive privileges. To permit a hostile party thus to act would make the terms of corporate rights and franchises frail indeed.

It is further urged by defendant that the plaintiff company possesses none of the rights and franchises of the Downingtown Gas and Water Company, because organized and incorporated under the act of May 25, 1878, which, in so far as it relates to gas and water companies, defendant claims to be unconstitutional.

In view of the fact that the Supreme Court has, inferentially at least, held the act to be constitutional in this very case when

before it, and also in Lycoming Gas and Water Co. v. Moyer, 11 W. N. C. 443, we do not consider this an open question; and if it were it is not material, for as purchaser at the sheriff's sale the plaintiff, under the provisions of the act of April 7, 1870, is vested with all the franchises and rights " of the old corporation."

It is, therefore, ordered and decreed that a writ of injunction issue on July 30, 1898, restraining the defendants from constructing or providing public waterworks, and from borrowing or appropriating any moneys for that purpose, and from supplying the said borough of Downingtown and its vicinity, and the persons, residents, partnerships and corporations therein with water from public waterworks; unless in the mean time an appeal be taken by the defendants under the provisions of the 9th section of the act of May 19, 1897, entitled " An act regulating the practice, bail, costs and fees on appeals to the Supreme Court and Superior Court."

*Error assigned* was the decree of the court.

*Alfred P. Reid*, with him *Butler & Windle*, for appellants.— Where a corporation is seeking to enforce against a person affected by no estoppel some right which the corporation possesses only by virtue of its regular and legal organization, the legal, not the de facto, organization of the corporation forms the basis of its rights, and there is no hardship in putting the corporation to the proofs of the validity of its franchises when it is itself in the same proceeding basing its right directly on them : Taylor on Corporations, p. 154; Morawetz on Private Corporations, sec. 768; Matter of B., W. & N. Ry. Co., 72 N. Y. 245; Incorporation of the National Indemnity & Endowment Co., 142 Pa. 450; Com. v. France, 3 Brewster, 148.

The act of 1878 contains no mention of gas and water companies in its title; hence it did not authorize the reorganization of such corporations, so as to invest them with the franchises of the former corporation.

Where the title of a supplementary act specifies the nature of the change made, its provisions are limited to the subjects specified in the title : Com. v. Bender, 7 Pa. C. C. R. 620; Mauch Chunk v. McGee, 81 Pa. 438; Dorsey's App., 72 Pa. 192;

Beckert v. City of Allegheny, 85 Pa. 191; Union Pass. Ry. Co.'s App., 81 * Pa. 91; Com. v. Edgerton Coal Co., 164 Pa. 284; Com. v. Ry. Co., 166 Pa. 453; Lycoming Gas & Water Co. v. Moyer, 11 W. N. C. 443.

The appellee was bound to show, before it could have the aid of a court of equity to enforce its claim to exclusive privileges, that it had complied with the express condition contained in the act of 1867, viz: " To erect suitable works within five years of the date of the passage of that act." It was a fact asserted by the bill and denied by the answer.

Under the Act of June 10, 1881, P. L. 112, the courts are authorized to determine complaints of the impurity or deficiency of the gas or water furnished by any such company, but courts cannot go further than to determine these questions, and cannot say where the company shall get its water, nor fix a tariff of water rents and command a corporation to furnish water to the public at the rate so fixed: Brymer v. Butler Water Co., 172 Pa. 489; Brymer v. Butler Water Co., 179 Pa. 231.

The rights of a complainant, not those of the defendant, determine the jurisdiction of the court in injunction cases: Mayor v. Gardner, 33 N. J. Eq. 622.

Whether a corporation has violated its charter or forfeited its franchise is a question solely for the determination of a court of law: President, Managers, etc., v. Trenton City Bridge Co., 13 N. J. Eq. 46; Grey v. Ohio & Penna. R. Co., 1 Grant, 412; Troy, etc., R. R. Co. v. Boston, etc., Ry. Co., 86 N. Y. 107.

A court of equity ought not to grant an injunction when it will operate inequitably or contrary to the real justice of the case: Mayor v. Gardner, 33 N. J. Eq. 622.

*John G. Johnson,* with him *R. T. Cornwell,* for appellee.—Where the legislation in the supplement is germane to the subject of the original bill, the object of such supplement is sufficiently expressed in the title: Railroad Company's Appeal, 77 Pa. 429.

If an act entitled a supplement to a former one, the date and title of which are given, be germane to the original act it does not violate the constitution: Loewi v. Haedrich, 8 W. N. C. 70; Second Nat. Bank of Titusville v. Caldwell, 13 Fed. Rep. 429; Craig v. First Pres. Church, 88 Pa. 42.

The constitution does not require that the title of an act shall be a complete index of its contents.   If the contents relate to and are cognate to the subject-matter referred to in the title, it is all that is required : Com. v. Green, 58 Pa. 226 ; Yeager v. Weaver, 64 Pa. 425.

The title to the supplement to an act antedating the amendment is sufficient to fairly give notice of the subject of the supplement, and that is all that can be required :· Allegheny Co. Home's App., 77 Pa. 77 ; R. R. Co.'s App., 77 Pa. 429 ; Mauch Chunk v. McGee, 81 Pa. 433; Loewi v. Haedrich, 8 W. N. C. 70 ; In re Pottstown Boro., 117 Pa. 538.

Even if the act were to be held unconstitutional as to corporations not named in the title, it would be good as to the appellee company here, for the title mentions manufacturing companies, and the Gas and Water Company of Downingtown belongs to that class of corporations : Com. v. Northern Elec. Light & Power Co., 145 Pa. 105 ; Nassau Gas-light Co. v. City of Brooklyn, 89 N. Y. 409.

Companies for the manufacture and sale of gas have been uniformly held to be manufacturing companies within clause 18 of section 2 of the Act of April 29, 1874, P. L. 73.

No allegation of the forfeiture of any franchise or of the corporate existence of the company can be made ,here : Cochran v. Arnold, 58 Pa. 399 ; Paterson v. Arnold, 45 Pa. 410 ; Garrett v. R. R. Co., 78 Pa. 465 ; Jones v. Dana, 24 Barb. 402 ; Stedman v. Eveleth, 6 Metcalf, 114 ; Beeson v. Lang, 85 Pa. 200 ; Hamilton v. R. R. Co., 144 Pa. 34.

Any cause which may work a forfeiture of the charter of a company is not the subject of inquiry collaterally : Hanover Junc., etc., R. R. Co. v. Haldeman, 82 Pa. 37 ; Spahr v. Farmers' Bank, 94 Pa. 429 ;. Angell & Ames on Corp. sec. 80 ; Commissioners, etc., v. Bolles, 4 Otto, 104; Irvine v. Lumbermen's Bank, 2 W. & S. 190; Weinman v. Pass. Ry. Co., 118 Pa. 192 ; DuBois Boro. v. Water Works Co., 176 Pa. 430 ; White v. City of Meadville, 177 Pa. 643 ; Com. v. Russell, 172 Pa. 506 ; Metzger v. Beaver Falls Boro., 178 Pa. 1.

Opinion by Mr. Justice Green, October 9, 1899 :

The title of the plaintiff in this action to the rights, property and franchises of " The Downingtown Gas and Water

Company " was derived by a purchase at sheriff's sale under proper proceedings instituted for that purpose. When this case was here before (175 Pa. 341), the validity of the plaintiff's title to the property and franchises in question was not impugned, and we held that a good title had been acquired by the sheriff's sale. Our Brother FELL, delivering the opinion, said : " The purchaser at the sheriff's sale, with others interested in the proceeds of the sale, at once organized a new corporation, adopting the name of ' The Gas and Water Company of Downingtown.' The new corporation accepted the provisions of article 16 of the constitution, and complied with the requirements of the Act of May 25, 1878, P. L. 145, in order that it might possess all the rights, privileges and franchises of the corporation which it succeeded." We thereupon enforced the rights claimed by the plaintiff against the defendant, by reversing the judgment and directing that an injunction should be granted by the court below restraining the defendant from erecting works.

In the case as it now comes before us the title of the plaintiff to the rights and franchises is attacked upon the ground that the title of the act of 1878 makes no specific mention of gas and water companies as being objects to which the act was intended to apply. But the title does describe the act as " A supplement to an act entitled ' An act concerning the sale of railroads, canals, turnpikes, bridges and plank roads,' approved April 8, 1861," and " extending the provisions of said act to coal, iron, steel, lumber, or oil or mining, manufacturing, transportation, and telegraph companies in this commonwealth." The act itself in its 1st section provides, " That whenever the material, rolling stock, property and franchises of any gas, water, coal, iron, steel, lumber, oil or mining, or manufacturing, transportation or telegraph company, or any railroad, canal, turnpike, bridge or plank road, or of any corporation, created by or under any law of this state, shall be sold and conveyed," by virtue of any process of any court, etc., the persons buying the same shall be constituted a body corporate, and shall be vested with all the property, rights and franchises of the corporation as whose property they are sold. Then follows provisions for effecting the new organization.

The most cursory glance at the language of the act proves

conclusively that it was intended to embrace, not only all the very numerous forms of corporate existence specifically mentioned, but all manufacturing companies, and all corporations created by law in this commonwealth. The plain object of the legislation was to establish a uniform system of procedure which should be applicable to the sale under judicial process of all the rights, property and franchises of every form of corporate existence, not municipal. A voluminous designation of particular corporations is made in the body of the act, and a much less numerous designation is set forth in the title, but among those mentioned in the title are manufacturing companies. As this is a very broad expression and will include almost every kind of corporate formation it can well be argued that the title was sufficiently generic to embrace all kinds of corporate activity. But it certainly does include gas companies, as artificial gas cannot be generated except by the process of manufacture.

In Allegheny County Home's Appeal, 77 Pa. 77, we said: " It will not do, therefore, to impale the legislation of the state upon the sharp points of criticism, but we must give each title as it comes before us a reasonable interpretation, ut res magis valeat quem pereat. If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary. It need not be an index of the contents, as has often been said." In State Line and Juniata R. R. Co.'s Appeal, 77 Pa. 429, we said, " The true rule is, that where the legislation in the supplement is germane to the subject of the original bill the object of such supplement is sufficiently expressed in the title." The title of the act of 1861 is " An act concerning the sale of railroads, canals, turnpikes, bridges and plank roads." The supplement of 1878 is entitled, " A supplement to an act entitled ' An act concerning the sale of railroads, canals, turnpikes, bridges and plank roads,' approved April 8, 1861, extending the provisions," etc. The bodies of both acts provided for the organization of the purchasers at judicial sale of the property, rights and franchises of corporations into new companies clothed with all the property rights and franchises of those that were sold. The object of both acts was the same, and the methods to be pursued were the same, prescribed in almost identical language. The chief

difference between the two acts was an increase in the number and kind of corporations embraced within the statutory provisions. Of course, the object of the act of 1878 was strictly germane to that of the act of 1861, and it is equally true that the title of the later act gives notice of the subject so as to lead reasonably to an inquiry into its body. In the opinion in the last case cited, 77 Pa. 429, PAXSON, J., said : "An examination of the pamphlet laws since the amendment of the constitution in 1864 discloses that 113 'supplements' and 'further supplements' to railroad charters have been passed. Embracing other corporations, there are about 1,400. This is important, not only as showing the extent of the interests to be affected by our decision, but also as exhibiting the uniform construction placed upon this section by the legislative and executive departments of the government. While we are not bound by their construction, it is nevertheless entitled to weight, and should always be treated with respect. In view of this unbroken current of legislation we are constrained so to treat this question as not to obliterate from our statute books a large number of acts under which important and costly improvements have been commenced, and rights have become vested. The construction now claimed for this clause of the constitution, if adopted by this court, would unsettle the business of the state to an extent beyond the capacity of any one to define. That we are not bound to do so is sufficiently clear both upon reason and authority."

The foregoing comments are precisely applicable to the present case.

In Mauch Chunk v. McGee, 81 Pa. 433, AGNEW, C. J., said in the opinion : "It is not the purpose or the duty of the Court to catch at pretexts to avoid legislation, where it can be fairly reconciled with the constitution. This has been the current of decision in this state in many cases. . . . In Commonwealth v. Clellans, 8 Pa. 226, Justice SHARSWOOD remarked that ' the intention of the constitutional amendment was to require that the real purpose of a bill should not be disguised or covered by the general words " and all other purposes," which was formerly so common, but should be fairly stated ; and it must be a clear case to justify a court in pronouncing an act, or any part of it, void on this ground.' "

In the case In re The Borough of Pottstown, 117 Pa. 538,

this whole subject was carefully reviewed in an opinion by our late Brother CLARK, in which it was held that where the title of an original act fully expressed the subject of the enactment, and an act entitled a supplement thereto has a title sufficiently expressing any subject within the purview, and contains provisions properly germane to the subject of the original, the supplementary act is not unconstitutional. There are many other decisions to a similar effect, but it is not necessary to cite them. We are very clear that the act of 1878 is not contrary to the constitution in extending the provisions of the act so as to embrace all corporations, and there is therefore no merit in the first assignment of error.

The remaining assignments do not require detailed discussion. That the plaintiff had succeeded to the exclusive powers possessed by the former company, and could now exercise them against the defendant, was sufficiently decided when the case was here before. That the forfeiture of the plaintiff's charter cannot be inquired into or considered in this collateral proceeding is so thoroughly established by numerous and familiar decisions that even a reference to them is not necessary. This branch of the case has been so correctly disposed of in the opinion of the learned court below, with which we entirely concur, that nothing further need be said. There was no merit in the petition for a rehearing, and it was very properly refused. The assignments of error are all dismissed.

The decree of the court below is affirmed, and the appeal dismissed at the cost of the appellants, the time for issuing the writ of injunction being now fixed on the 30th day of October, 1899.